UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIAM BARTLETT,

      Plaintiff,

v.                                                                          Case No.  1:07-CV-1180

FRUITPORT TOWNSHIP,                                    HON. GORDON J. QUIST
OFFICER JONATHAN DURELL,
and OFFICER ALLEN,

      Defendants.
_____/

**OPINION**

Plaintiff, William Bartlett ("Bartlett"), has sued Defendants, Fruitport Township (the "Township"), Officer Jonathan Durell ("Officer Durell"), and Officer Rory Allen ("Officer Allen"), alleging a claim under 42 U.S.C. § 1983 and various state law claims arising out of an incident in which Bartlett alleges that Defendants used excessive force on him.  Count I alleges a claim under § 1983.  Counts II and III allege, respectively, state law claims for violation of ministerial duties and gross negligence.  Finally, Count IV alleges a claim of municipal liability against the Township on the § 1983 claim.  Now before the Court is Defendants' Motion for Summary Judgment.  For the reasons stated below, the Court will grant Defendants' motion and dismiss Bartlett's complaint.

**I. FACTS**

On May 30, 2005, Bartlett went to the Fruitport Old Fashioned Days carnival with his girlfriend; his daughter, Kelli; his girlfriend's daughter, Brianna; and other family members.  They arrived at the carnival shortly after dark.  The group split up, and Brianna and Kelli went off by themselves to go on the rides.  (Bartlett Dep. at 65.)  Bartlett and his girlfriend sat on a bench while

watching his son's fiancee's baby. (*Id.*) After a while, Brianna and Kelli returned and were upset because a carnival worker became angry and swore at them when Kelli moved a bar on the ride they were riding.[1] Brianna and Kelli asked Bartlett to go to the carnival worker and make him apologize to them. (*Id.*) Bartlett initially told them "no" because he was on probation and, recognizing the potential for violence, did not want to do anything that might jeopardize his status. (*Id.* at 68-69, 70.) Bartlett eventually reconsidered and agreed to go talk to the carnival worker.

Bartlett and the others walked to the carnival worker's ride. As Bartlett approached, he saw the carnival worker, later identified as Charles Janes, standing at the controls operating the ride. (*Id.* at 72.) Janes was standing behind a rail or a fence used to keep the public away from the operator's area. (*Id.* at 73.) Bartlett walked up to Janes and talked to him while he was operating the ride. Bartlett told Janes that he should watch his language in front of young children and the public and that Janes should apologize to Brianna and Kelli. (*Id.* at 73-76.) Janes refused to apologize and became irate and "went off" on Bartlett. (*Id.* at 76.) Bartlett also became upset and raised his voice, and he admits that he may have "invite[d] [Janes] to fight" and "called him out from behind the fence."[2] (*Id.* at 77, 97.)

When it became clear that Janes would not apologize, Bartlett told Janes that he was going to speak with Janes' boss. As Bartlett turned and walked away, Janes picked up a three-foot aluminum level and came out from behind the fence and followed Bartlett.[3] (*Id.* at 78.) As Bartlett

---

[1]Bartlett testified that both girls were so upset that they were "crying their eyes out." (Bartlett Dep. at 66.) Brianna testified that neither she nor Kelli were crying. (Corbiere Dep. at 17.)

[2]Bartlett's admissions are confirmed by two independent witnesses, Jeffrey Rose and Diane Dirkes, who both stated that Bartlett told Janes to come out and fight. (Police Reports, Defs.' Br. Supp. Ex. D.)

[3]There is some dispute about whether Janes went after Bartlett or whether Janes was tying to walk away from Bartlett. Bartlett testified that he had turned and began walking away when Janes came after him. (Bartlett Dep. at 78.) Briana testified that Janes picked up the level while Bartlett was still facing Janes and that Bartlett backed up as Janes

was walking away, his girlfriend and the girls yelled that he should turn around because Janes was

coming toward him with something.  (*Id.* at 78, 81-82.)  Bartlett turned around and saw Janes

coming toward him holding the level with two hands, as if he intended to hit Bartlett.  (*Id.* at 82-83.)

Janes stopped when Bartlett turned around, and Bartlett raised his arm above shoulder level to block

the attack.  (*Id.* at 84-86.)  At that point the men were about five to six feet apart from each other.

(*Id.* at 82.)

During the altercation, Officers Durell and Allen were on foot patrol in the park a short

distance away when they were informed that a fight had broken out in the park.  (Durell Dep. at 25.)

In response they began making their way to that area of the park, with Officer Durell leading the

way several steps in front of Officer Allen.  (Allen Dep. at 11.)  At that point Officer Durell had not

decided what action he would take when he reached the scene.  (Durell Dep. at 26.)  The officers

arrived at the scene just as Bartlett turned around and raised his arm.  They approached from behind

Bartlett, with Janes facing them but located about three to six feet away from Bartlett.  (Bartlett Dep.

at 82; Durell Dep. at 44.)  Officer Durell observed one subject, Bartlett, with his right fist raised "in

a fighting stance," and the other subject, Janes, with an object in his hand and also "in a fighting

stance."  (Durell Dep. at 27.)

Based upon his observations, Officer Durell concluded "[t]hat there was a fight going on in

front of several people, including small children, and that [he] needed to stop the fight."  (*Id.* at 30.)

Officer Durell made the instant decision to grab Bartlett – the closest of the two – by the waist.  (*Id.*

at 28.)  Bartlett did not see Officer Durell and had no idea who grabbed him.  (Bartlett Dep. at 86-

---

came out from behind the fence.  (Corbiere Dep. at 19-20.)  Witness Dirkes stated that Janes came out with the level and was trying to leave the area with Bartlett following him.  (Police Report, Defs.' Br. Supp. Ex. D.)

88.) They fell to the ground, with Officer Durell on top of Bartlett.[4] (*Id.* at 90.) Bartlett's face and chest hit the ground, causing some scrapes on Bartlett's forehead and a dental injury. (*Id.* at 100; Durell Dep. at 34.) Officer Durell handcuffed Bartlett as he held Bartlett to the ground and at some point identified himself as a police officer. (Durell Dep. at 30.) Bartlett became compliant once Officer Durell identified himself. (*Id.*) After a few minutes, Officer Durell released Bartlett from the handcuffs and helped him up. (Bartlett Dep. at 92-93.)

Officer Allen, who was several steps behind Officer Durell, went to confirm that Officer Durell was fine and had Bartlett under control and then walked over to Janes. (Allen Dep. at 12.) Once Janes saw Allen, he immediately put the level down. (*Id.*) The officers interviewed witnesses but decided not to take any action because neither Bartlett nor Janes was interest in pursuing criminal charges against the other. (Durell Dep. at 37-38.) Officer Durell asked Bartlett whether he desired medical treatment but Bartlett declined. (*Id.* at 35.) Although the officers asked Bartlett to leave the carnival, Bartlett stayed for another two hours to watch the fireworks. (Corbiere Dep. at 31-32.)

## II. MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

---

[4]Officer Durell testified that when he grabbed Bartlett, Bartlett pulled away, causing the two of them to lose balance and fall to the ground. (Durell Dep. at 29). Officer Allen similarly testified that "they fell to the ground." (Allen Dep. at 12.) Brianna testified that Officer Durell "tackled" Bartlett to the ground. (Corbiere Dep. at 27.)

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. DISCUSSION

**A.      Section 1983 Claim**

As mentioned above, Bartlett asserts a § 1983 claim in Count I of his Complaint, although he does not refer to the specific right at issue.  His Complaint suggests, and his response to Defendants' motion confirms, that he is asserting a violation of his Fourth Amendment rights. Although Bartlett's allegations are limited to Defendants' alleged use of excessive force, (Compl. ¶ 10), Bartlett also makes brief reference to an unlawful seizure in his response brief.  Accordingly, the Court will consider both claims.

**1.      Individual Defendants**

Bartlett claims that Officer Durell violated his Fourth Amendment rights by seizing him and by using excessive force.  Bartlett claims that Officer Allen failed to act to prevent Officer Durell from using excessive force.  Officers Durell and Allen contend that Bartlett cannot establish a Fourth Amendment violation against them and, in any event, they are entitled to qualified immunity. Because the existence of a constitutional violation is usually the first step of the qualified immunity analysis, the Court will address the viability of Bartlett's claim as part of that analysis.

Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Poe v. Haydon*, 853 F.2d

5

418, 423 (6th Cir. 1988)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2735 (1982)).  A law enforcement officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [] officer[] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3040 (1987). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

Courts generally follow the Supreme Court's two-part analysis in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), when determining whether a defendant is entitled to qualified immunity.  The threshold inquiry is whether the facts, taken in a light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right.  *Id.* at 201, 121 S. Ct. at 2156.  If that question is answered in the affirmative, the court must then ask "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition."  *Id.* The Supreme Court no longer regards the two-step *Saucier* procedure "as an inflexible requirement." *Pearson*, 129 S. Ct. at 813.  Rather, lower courts have discretion to dispense with the first step of that procedure where appropriate.  "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."  *Id.* at 818.  In this case, the Court will consider both steps because Bartlett's municipal liability claim depends upon whether Bartlett can establish a constitutional violation.

To be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation." *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir. 1991).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing"

violates federal law.  *Anderson*, 483 U.S. at 640, 107 S. Ct. at 3039.  While replication of the official's specific conduct is not required to overcome qualified immunity, "'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'"  *Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) (quoting *Lassiter v. Ala. A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)).

### a.    Constitutional Violation

#### *Unreasonable Seizure*

The Fourth Amendment prohibits "unreasonable searches and seizures." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006).  A person is "seized" within the meaning of the Fourth Amendment when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980)).  An officer who has a "reasonable suspicion" that criminal activity may be afoot may conduct a limited seizure and briefly detain a person for investigative purposes. *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85 (1968).

Officer Durell had reasonable suspicion to detain Bartlett for a brief period.  As set forth above, Officer Durell arrived at the scene with the knowledge that an altercation or fight was in progress.  His initial observations confirmed this, as he saw two individuals poised to fight.  In fact, Bartlett himself believes that if Officer Durell had not grabbed Bartlett when he did, Janes probably would have hit him in the head with the level.  (Bartlett Dep. at 84.)  Even if Officer Durell misjudged the situation or grabbed the wrong person, as Bartlett asserts, Officer Durell had a reasonable basis to conclude that a fight was in progress and that quick action was required to diffuse the situation.  Because Bartlett had his hand or fist raised and appeared ready to strike Janes,

Officer Durell's decision to grab Bartlett was reasonable.  Moreover, Bartlett was detained only for a brief period of time.  Therefore, Bartlett has failed to establish a Fourth Amendment violation based on an unreasonable seizure.

### *Excessive Force*

An excessive force claim must be analyzed under the Fourth Amendment's standard of objective reasonableness.  *Graham v. Connor*, 490 U.S. 386, 395-96, 109 S. Ct. 1865, 1871 (1989).  This standard must be applied in light of the reality that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving."  *Id.* at 397, 109 S. Ct. at 1872.  Thus, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id*. at 396, 109 S. Ct. at 1872.  In determining whether an officer's actions were reasonable, a court must examine the specific facts of the case.  *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (2001)(citing *Graham*).  Factors that bear on the issue are: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is cooperating or is actively resisting arrest or attempting to flee.  *Id.*

Construed in favor of Bartlett, the evidence fails to show that Officer Durell used an unreasonable amount of force when he grabbed Bartlett.  As noted above, Officer Durell found the circumstances at the scene consistent with what he had been told – a fight was in progress.  Seeing Bartlett with his hand or fist raised and in what appeared to be "a fighting stance," Officer Durell reasonably believed that immediate action was required in order to prevent harm to both Bartlett and Janes as well as those standing in the crowd nearby, including children.  Grabbing Bartlett and taking him to the ground (assuming that Officer Durell simply did not fall with Bartlett because Bartlett pulled away) was reasonable in light of the potential harm that Bartlett and Janes presented

to each other and to those in the crowd around them.  Bartlett happened to be the closest of the two men and, thus, securing him first was the obvious choice.  Furthermore, Bartlett not only admits that there was at least "a minimal threat to the two men," (Pl.'s Resp. Br. at 7), but testified that Janes would have hit him had Officer Durell not intervened.  Although Bartlett contends that Officer Durell should have first tried to resolve the situation with verbal commands, the circumstances called for immediate action and it was reasonable to use some force.  Finally, the evidence shows that Bartlett's injuries occurred during the fall, and not after Officer Durell had Bartlett on the ground in handcuffs.

*Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002), on which Bartlett relies, is distinguishable because in *Phelps*, after the officer had the plaintiff on the ground, he hit the plaintiff in the face twice and grabbed his shirt and banged his head into the ground three times, when there was no need for force.  *Id.* at 297.  There is no such evidence in the instant case.

### Failure to Act

Bartlett's claim against Officer Allen for failure to prevent the use of excessive force fails because Officer Durell did not use an unreasonable amount of force on Bartlett.  The claim would also fail for the separate and independent reason that Officer Allen was several steps behind Officer Durell, had no idea what Officer Durell intended to do, and lacked the opportunity to prevent Officer Durell from using force against Bartlett.

### b.    Qualified Immunity

Having concluded that Bartlett has failed to establish a constitutional violation, the Court need not consider the second step of the qualified immunity analysis. Nonetheless, even if Bartlett had established a constitutional violation, Officers Durell and Bartlett would be entitled to qualified

immigration because the law was not clearly established such that reasonable police officers faced with the same set of circumstances would have known that their actions violated the law.

### 2. Municipal Liability

Bartlett's claims against the Township based on municipal liability also fail. Where a municipality's liability is based upon the alleged unconstitutional actions of its employees, a court may properly dismiss the plaintiff's claims against the municipal defendant where the plaintiff fails to demonstrate a constitutional violation. *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). Moreover, Bartlett has failed to present evidence of a Township custom or policy that was the driving force behind the asserted constitutional violation. *Sigley v. City of Parma Heights*, 437 F.3d 527, 538 (6th Cir. 2006).

## B. State Law Claims

### 1. Violation of Ministerial Duties

Bartlett alleges a state law claim in Count II denominated violation of ministerial duties. Defendants contend that dismissal is required because there is no such tort. The Court agrees. *See Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 482-83 (E.D. Mich. 2006) ("Finally, with regard to Plaintiff's claim in Count II denominated as 'violation of ministerial duties,' there is no such cause of action in Michigan."). Moreover, even if such a claim were recognized, Officers Durell and Allen were engaged in *discretionary*, not ministerial, functions.

### 2. Gross Negligence

Bartlett also alleges a claim for gross negligence. Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(7(a). Michigan courts have held that this definition suggests an "almost willful disregard of precautions or measures to attend to safety and a singular disregard for substantial

risks." *Tarlea v. Crabtree*, 263 Mich. App. 80, 90, 687 N.W.2d 333, 339 (2004).  Nothing in the record suggests that Defendants acted with willful disregard of precautions or safeguards, nor did they show a lack of concern for the possibility of injury.  As the Court has noted above, Defendants acted reasonably under the circumstances.  Thus, there is no basis for a gross negligence claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.

An Order consistent with this Opinion will be entered.

Dated:  May 28, 2009                                          /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE